## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| B SQUARED, INC., | ) | CASE NO.1:06CV1802 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| NATIONAL CITY BANK | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff B Squared, Inc.'s ("BSI") and Defendant National City Bank's ("NCB") Motions for Summary Judgment (ECF #s 23 & 25). For the following reasons, the Court denies Defendant's Motion and grants, in part, Plaintiff's Motion.

**Factual Allegations in Plaintiff's Complaint**

Plaintiff B Squared, Inc., d/b/a All California Funding's Complaint alleges American Empire Surplus Lines Insurance Co. ("American") maintained a checking account with NCB in 2005. On or about July 25, 2005, American issued check number 0196520, drawn on its NCB account, in the amount of $437,630.00, payable to BSI, Berwick Partners, LLC and Alex N. Sill Company as co-payees. The check was payment, pursuant to an insurance policy, for fire damage to an apartment building owned by Berwick Partners. Alex N. Sill Company was hired

to facilitate the processing of the insurance claim.  BSI, a facilitator of loans for real estate development, had a financial relationship with Berwick Partners in the apartment complex.  On or about July 27, 2005, American issued the check under its insurance policy.  Alex N. Sill received the check from American, endorsed the check and forwarded it to Berwick Partners.  BSI never received the check.  BSI's endorsement was allegedly forged and Berwick never endorsed the check.  Sometime thereafter, the check was presented to another bank which disbursed the funds to the unknown presenter.  This depositary bank then presented the check to NCB, the account holder.  On August 2, 2005, NCB paid the full amount of the check in spite of the above flaws.  As a result, BSI did not receive any proceeds of the check.  BSI contends NCB's payment constitutes conversion under Ohio Revised Code §1303.60.

On September 18, 2006, Defendant NCB filed a Motion to Dismiss, alleging NCB had no duty to verify indorsements on checks cashed at another bank and that liability for payment over an alleged forged indorsement lies with the depositary bank.  The Court denied Defendant's Motion because it required examination of materials outside the Complaint.  The Court then permitted limited discovery to address the issue of NCB's duty to a co-payee under the Uniform Commercial Code ("UCC").  Defendant contends the sole issue before the Court at this time is the duties imposed by the UCC on NCB as drawee/payor bank to a co-payee on an alleged forged instrument.

## STANDARD OF REVIEW

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v.*

*United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

## **LAW AND ANALYSIS**

At issue is the duty owed by payor/drawee bank, in this case NCB, to a non-customer co-

payee on an instrument paid by depositary bank and NCB over an allegedly forged and incomplete indorsement.  Plaintiff contends, under Ohio law, both the depositary and payor banks are liable.  Plaintiff cites to Ohio Revised Code Section §1303.60, Ohio's codification of Uniform Commercial Code §3-420, which states:

> (A) The law applicable to conversion of personal property applies to instruments. ***An instrument also is converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or if a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment***. An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee. (Emphasis added).
>
> (B) In an action under division (A) of this section, the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.
>
> (C) A representative, other than a depositary bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.

Plaintiff contends O.R.C. §1303.60 permits recovery by co-payee when a bank pays on a forged instrument.  In this case, both the depositary bank and NCB as the payor bank paid notwithstanding the fraudulent indorsement.  The depositary bank paid to the presenter and then sought reimbursement from NCB as the account holder drawee/payor bank.  Plaintiff alleges the plain language of O.R.C. §1303.60 allows recovery against either the depositary bank or payor bank because it does not distinguish between the two.  O.R.C. §1303.60 finds liability for conversion "if a ***bank*** makes or obtains payment with respect to the instrument for a person not

4

entitled to enforce the instrument or receive payment." (Emphasis added). Plaintiff contends the depositary bank was not entitled to payment on the check because it paid over the fraudulent indorsement, therefore, NCB is liable for conversion because it paid depositary bank over the fraudulent indorsement.

NCB argues it had no duty to verify indorsements on a check cashed at another bank. Also, NCB contends the UCC requires a payee proceed against the bank that cashed the check, not NCB, who merely held the account on which the check was drawn. The parties do not dispute the indorsement on the presented check was incomplete and/or fraudulent.

In Ohio, the applicable conversion definition in O.R.C. §1303.60 states:

> An instrument also is converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or if a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

Ohio's codification of the UCC does not draw a distinction between the depositary bank's liability and the payor bank's liability to the payee for payment on a check over a forged indorsement. The Official Comments to UCC 3-420, the UCC section codified by O.R.C. §1303.60 states in pertinent part:

> The second sentence of Section 3-420(a) states that an instrument is converted if it is taken by transfer other than a negotiation from a person not entitled to enforce the instrument or taken for collection or payment from a person not entitled to enforce the instrument or receive payment. This covers cases in which a depositary or payor bank takes an instrument bearing a forged indorsement.

Because both the depositary bank and Defendant NCB, as payor/drawee bank, paid over the alleged forged indorsement, both are liable, though Plaintiff may not make a double recovery for the alleged conversion. See Section 3 of UCC 3-420.

In *Druso, et al., v. Bank One of America,* 124 Ohio App. 3d 125, (1997), the Ohio Court of Appeals held under O.R.C. §1303.60's predecessor, O.R.C. §1303.55 (A)(3), that "a bank is liable for conversion regardless of whether the bank is a depositary or the payor bank." *Druso,* at 132, citing *United Home Life Ins. Co., v. Bellbrook Community Bank,* 50 Ohio App.3d 53 (1988). In *Druso*, both the depositary bank and drawee bank paid over a forged indorsement. The Ohio appellate court found that under the language and reasoning of the UCC, both banks were liable for conversion.

The Court finds that O.R.C. §1303.60 and the supporting UCC commentaries clearly contemplate conversion liability on behalf of both the depositary bank and payor bank. Ohio courts have held consistent with the commentaries and the Court is not aware of any Ohio law to the contrary.

The Court also finds Plaintiff's remedy for conversion is not limited to recovery against the depositary bank. Again, the language of O.R.C. §1303.60, the Official Comments to UCC 3-420 and Ohio law clearly permit recovery against either the depositary bank or the payor bank. While NCB's ultimate liability is yet to be determined, if found liable to Plaintiff, NCB may pursue recovery against the depositary bank due to the depositary banks warranties. See UCC 3-420 Official Comment 3.

> "The depositary bank is ultimately liable in the case of a forged indorsement check because of its warranty to the payor bank under Section 4- 208(a)(1) and it is usually the most convenient defendant in cases involving multiple checks drawn on different banks. There is no basis for requiring the owner of the check to bring multiple actions against the various payor banks and to require those banks to assert warranty rights against the depositary bank. In revised Article 3, the defense provided by Section 3-420(c) is limited to collecting banks other than the depositary bank. If suit is brought against both the payor bank and the depositary bank, the owner, of course, is entitled to but one recovery."

See also *Olympic Title Ins. Co. v. Fifth Third Bank of W. Ohio,* 2d Dist. No. 20145, 2004 WL 2009285 (Ohio App. Sept. 10, 2004). ( Generally speaking, the drawee bank may pass liability back through the collection chain to the party that took from the forger and to the forger himself.)

There is no limitation placed on Plaintiff to sue only the depositary bank for conversion. Because Ohio law, and the UCC place no such restriction, neither will this Court.

Defendant cites the Court to the Third Circuit's opinion in *Guardian Life Insurance v. Weisman,* 223 F.3d 229, 231 (3rd Cir. 2000) which held, "as a matter of law, drawee banks are not obliged to review payee endorsements on checks from depositary banks." In *Guardian*, an authorized agent of three insurance companies submitted fraudulent payment requests to those companies, forging customer names. He then deposited the checks from the insurance companies into his private checking account. The insurance companies brought suit against the depositary bank for conversion, improper payment, negligence and fraud.

The Court finds this case distinguishable for several reasons. First, the Third Circuit found no obligation by a drawee bank in the context of a negligent drawer defense. "The first question we must resolve is whether a drawee bank must verify illegible payee indorsements on checks received from a depositary bank before the drawee bank is entitled to assert the negligent drawer defense..." *Id*. Second, while instructive, Third Circuit decisions are not binding precedent on this Court. Finally, the facts of *Guardian* differ from the case *sub judice* in that *Guardian* involved an action by a drawer- i.e. the insurance companies- seeking recovery against a depositary bank for the wrongful acts of an agent of the insurance companies. In the case before this Court, a co-payee is seeking recovery against the payor/drawee bank. Therefore, the

holding in *Guardian* is distinguishable.

Defendant contends the Third Circuit's opinion in *Guardian* should control, regardless of the fact it analyzed a different UCC section, involved different parties in different roles and was an opinion by a court outside this circuit.  Defendant argues because the Third Circuit analyzed Article Three of the UCC as a whole, its conclusion must necessarily apply in the interest of providing a cohesive and coherent set of rules in furtherance of the stated goals of the UCC.  Applying the Third Circuit's holding in *Guardian* to the facts of this case will "ensure uniformity in the application of the UCC."  (Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment pg. 4 fn. 3).  Defendant then cites to *United States of America v. Burnette-Carter,* 575 F.2d 587 (6th Cir. 1978) as support for its assertion that "federal precedent should be followed-even over conflicting state case law- in order to create a true uniform federal law when interpreting the UCC."

This Court disagrees with Defendant's interpretation of *Burnette- Carter*.  In *Burnette-Carter*, the United States, on behalf of the Farmers Home Administration (FmHA), an agency within the United States Department of Agriculture, brought a conversion claim against a farmer who sold livestock subject to an FmHA security interest.   The issue before the Court was the validity of the security interest in the livestock under UCC 9-103(3).  The Sixth Circuit analyzed the necessity of crafting a federal rule to determine the validity of a security interest in FmHA cases:

> We must now focus on whether the FmHA's security interest was valid vis-a-vis *Burnette-Carter*. There is a split among the circuits as to whether the federal courts should look to state law in making this determination or fashion a uniform federal rule. Following the dictates of *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), this court has held that a uniform federal rule is appropriate in FmHA security

8

interest cases.

*Id.* at 589.

Not only was *Burnette-Carter* limited to FmHA security cases, it was also an Article 9 UCC case, not Article 3. Finally, *Burnette-Carter* recognized a federal court's obligation to apply state law to claims before the Court on diversity jurisdiction. "This does not mean that this court should ignore relevant state law; it simply means that we are not bound by state law as we are in diversity of citizenship cases under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)." *Id.*

There is no dispute this action was brought under the federal diversity statute 28 U.S.C. §1332. In diversity cases involving claims under a state's codification of the UCC, state law governs. See *Hisrich v. Volvo Cars of North America, Inc.,* 226 F.3d 445 (6th Cir 2000) ("the federal court, sitting in diversity, applies the same law as would be applied by the Ohio state courts") and *Bailey Farms Inc., v. NOR-AM Chemical Co.,* 27 F.3d 188, 191 (6th Cir. 1994) ("Because jurisdiction in this case is based upon diversity of citizenship of the parties, we apply state law in accordance with the then controlling decision of the highest state court.") See also *Ralph Shrader, Inc. v. Diamond Intern. Corp.,* 833 F.2d 1210, (6th Cir. 1987) and this District's ruling in *Metz v. Unizan Bank,* 416 F.Supp.2d 568 (N.D. Ohio, 2006), examining state codification of UCC sections under the applicable state court decisions. Therefore, this Court disagrees with Defendant's interpretation of *Burnette-Carter* and finds Ohio state law controls.

Finally, NCB contends it has acted in a commercially reasonable manner and therefore, pursuant to O.R.C. §1303.60(C), it is not liable for conversion. O.R.C. §1303.60(C) states:

(C) A representative, other than a depositary bank, who has in good faith dealt with an

9

instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.

Defendant contends it has acted in accordance with accepted banking practices, duties imposed on banks under the UCC and its own policies. Therefore, Defendant argues it cannot be held liable to Plaintiff for conversion under the good faith exception of O.R.C. §1303.60(C). Defendant's assertion of compliance with applicable banking requirements is supported by an affidavit by C. Michael Barger, Senior Vice-President, Operations Support Services. However, Defendant has requested, should this Court find Plaintiff may maintain an action for conversion against Defendant, it be permitted to conduct additional discovery on its affirmative defenses, including good faith, comparative negligence, ratification and apparent authority, before the Court determines ultimate liability. The Court, in light of the limited discovery ordered prior to filing these motions for summary judgment, agrees and will set a case management schedule accordingly. The Court will reserve ruling on the above affirmative defenses until discovery is complete.

Therefore, the Court finds Plaintiff may bring an action for conversion against Defendant NCB as the payor/drawee bank and NCB may be held liable for conversion because it paid out on a check over an alleged forged indorsement. Therefore, the Court grants, in part, Plaintiff's Motion for Summary Judgment, insofar as it finds Defendant may be held liable to Plaintiff for conversion and denies Defendant's Motion for Summary Judgment. Defendant's ultimate liability cannot be determined until full discovery has been completed.

        IT IS SO ORDERED.

                                      S/Christopher A. Boyko

                CHRISTOPHER A. BOYKO
                United States District Judge

March 21, 2008